# EXHIBIT 1

**Robbins Geller**
**Rudman & Dowd** LLP

Boca Raton     Melville     San Diego
Chicago     Nashville     San Francisco
Manhattan     Philadelphia     Washington, D.C.

Robert R. Henssler, Jr.
bhenssler@rgrdlaw.com

February 23, 2022

<u>VIA EMAIL</u>

John M. Skakun III
Sidley Austin LLP
One South Dearborn St.
Chicago, IL  60603

      Re:    *Hall v. Johnson & Johnson, et al.*,
              No. 3:18-cv-01833-FLW-TJB (D.N.J.)

Dear Counsel:

      Per your request during last week's meet and confer regarding Defendants' Objections to Lead Plaintiff's Fourth Set of Requests for Production of Documents, dated February 11, 2022, please see below for a brief, non-exclusive summary of the relevance of these requests to the elements of scienter, materiality and loss causation. As discussed on our call, Lead Plaintiff San Diego County Employees Retirement Association ("Lead Plaintiff") reserves all rights to modify or supplement this argument in the future.[1]

      As you are aware, Lead Plaintiff alleges that during the Class Period, J&J faced lawsuits brought by consumers alleging that J&J's talcum products had caused their cancer. ¶¶120, 179-186, 192-201, 204, 213-222.[2] Knowing the importance of Johnson's Baby Powder to J&J's reputation – and stock price – Defendants made numerous false and misleading statements to conceal the truth about the Company's talc and talc-based powders. ¶¶120, 253-391. Defendants misleadingly assured consumers and investors that J&J's talcum products have "always" been asbestos-free and "a safe choice." *See, e.g.*, ¶¶266, 288, 299, 302-304, 335, 338-339. J&J's statements in a September 21, 2017 *Bloomberg* article discussing the "risk" of asbestos in talc are illustrative: "our talc products are, and always have been, free of asbestos" and "[h]istorical testing of samples by the FDA, numerous independent laboratories, and numerous independent scientists

---

[1] Defendants are Johnson & Johnson ("J&J" or the "Company"), Alex Gorsky, Carol Goodrich, Joan Casalvieri and Tara Glasgow (collectively, "Defendants").

[2] Unless otherwise noted, all "¶_" and "¶¶_" references are to the First Amended Complaint for Violations of the Federal Securities Laws (ECF No. 33).

**ROBBINS GELLER**
**Rudman & Dowd LLP**

John M. Skakun III
February 23, 2022
Page 2

have all confirmed the absence of asbestos in our talc products." ¶183. Lead Plaintiff alleges that the relevant truth was revealed through a series of partial disclosures, the last of which were the December 14, 2018 *Reuters* articles entitled: "Powder Keg: Johnson & Johnson knew for decades that asbestos lurked in its Baby Powder" and "A Guiding Hand on Talc Safety Research" (collectively, the "*Reuters* Report"), which contained new information further revealing the truth about Defendants' misstatements. *E.g.*, Lead Plaintiff's Reply in Further Support of Motion of Class Certification (ECF No. 98) ("Class Cert. Reply"), §§II, III.D.1.

In late 2021, J&J initiated the Texas Two-Step to purportedly save itself from complete financial ruin as a result of the ongoing talc litigation. Another *Reuters* article, published on February 4, 2022, revealed that J&J had been internally planning to launch the Texas Two-Step as early as April 2021, despite making contrary public statements that it planned to fight the product liability claims to the end.[3]

Documents related to J&J's Texas Two-Step are relevant to the fraudulent scheme alleged in several respects.

First, J&J has asserted materiality-type arguments and affirmative defenses in this action. For example, Defendants argued that because Baby Powder represented just 0.3% of J&J's combined company sales, Lead Plaintiff cannot show scienter. Among other reasons, the fact that J&J's consumer division was purportedly forced into bankruptcy by the talc litigation rebuts J&J's immateriality arguments.

Second, given the link between the Texas Two-Step and the *Reuters* Report, the documents requested are relevant to loss causation. As detailed in Lead Plaintiff's Class Cert. Reply, the fact that the *Reuters* Report revealed new information is further confirmed by the fact that it led immediately to governmental investigations of J&J and ignited the crisis that led to J&J pulling the product in the United States and Canada – and ultimately declaring bankruptcy via the Texas Two-Step. Class Cert. Reply at 2-3, 7-8. Indeed, J&J's Texas Two-Step is just the latest development relating to the fraudulent scheme alleged and, according to J&J's own lawyers, is linked to the December 14, 2018 *Reuters* Report. *See In re: LTL Mgmt. Inc.*, No. 21-30589-MBK (Bankr. D.N.J. Feb. 3, 2022) (ECF No. 1359-1).

---

[3]  *See* Mike Spector & Dan Levine, *Special Report: Inside J&J's secret plan to cap litigation payouts to cancer victims*, Reuters (Feb. 4, 2022), https://www.reuters.com/business/healthcare-pharmaceuticals/inside-jjs-secret-plan-cap-litigation-payouts-cancer-victims-2022-02-04/.

**Robbins Geller Rudman & Dowd LLP**

John M. Skakun III
February 23, 2022
Page 3

      Third, the documents relating to the Texas Two-Step are relevant because the bankruptcy arose out of the same transaction as the fraudulent scheme alleged in this action, and the bankruptcy concerns a critical development that is part of the complete story of the alleged omissions and false statements at issue in this case.

      Fourth, J&J's decision to launch the Texas Two-Step while making contrary public statements is relevant to J&J's scienter in the pending litigation. In other words, this evidence is relevant as Federal Rule of Evidence 404(b).

      Last, you asked about Lead Counsel's prior statements that the Texas Two-Step has no impact on this case and how those statements are consistent with Lead Plaintiff's request for documents related to the Texas Two-Step. As we explained, our prior statements concern the fact that this federal lawsuit alleging that Defendants violated the federal securities laws by making false and misleading statements is not subject to the bankruptcy stay because it is not a state court lawsuit alleging personal injury from products. However, as noted above and explained during our call, the underlying issues surrounding the Texas Two-Step bankruptcy are highly relevant to the claims and defenses at issue here. We asked whether you believed this case could be part of the Texas Two-Step bankruptcy and you stated that you weren't prepared to say, but would get back to us. We also asked you to confirm that the requested documents have already been produced to the talc personal injury plaintiffs, and you stated that you would get back to us on that question as well.

      Please confirm whether the documents requested by Plaintiff's Fourth Set of Requests for Production of Documents, dated January 11, 2022, have already been produced to the talc plaintiffs. And, please let us know whether you'll agree to produce the requested relevant documents in this case.

      Very truly yours,

      ROBERT R. HENSSLER, JR.

RRH:tlc

Cases\4884-8696-6032.v1-2/23/22