**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1527368352

| | |
|---|---|
| LTL MANAGEMENT LLC,<br><br>               Plaintiff,<br>v.<br><br>SAN DIEGO COUNTY EMPLOYEES RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated,<br><br>               Defendants. | Adv. Proc. No. 22-01073 (MBK) |

**DECLARATION OF JOHN K. KIM IN SUPPORT OF DEBTOR'S
VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND RELATED
MOTION WITH RESPECT TO PUTATIVE SECURITIES CLASS ACTION**

John K. Kim, being first duly sworn, deposes and states as follows:

1. I am the Chief Legal Officer of LTL Management LLC, a North Carolina limited liability company (the "Debtor") and the debtor in the above-captioned chapter 11 case and plaintiff in the above-captioned adversary proceeding. I have held this position with the Debtor since its formation on October 12, 2021.

2. On October 14, 2021 (the "Petition Date"), the Debtor commenced a reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On March 7, 2022, the Debtor commenced the above-captioned adversary proceeding by filing a complaint [Adv. Pro. Dkt. 1] (the "Complaint") and filed the *Debtor's Motion for an Order (I) Preliminarily Enjoining the Prosecution of Putative Securities Class Action and (II) Granting a Temporary Restraining Order Pending a Further Hearing* [Adv. Pro. Dkt. 2] (the "Preliminary Injunction Motion"). I have read the Complaint, and I declare under penalty of perjury that the factual allegations therein are true and correct.

3. On the Petition Date, I submitted the *Declaration of John K. Kim in Support of First Day Pleadings*, No. 21-30589, ECF No. 5 (the "First Day Declaration") in the Chapter 11 Case. Thereafter, I submitted the *Supplemental Declaration of John K. Kim in*

*Support of Debtor's Complaint for Declaratory and Injunctive Relief and Related Motions*, Adv. Pro. No. 21-03032, ECF No. 3 (together with the First Day Declaration, the "<u>Prior Declarations</u>").  The Prior Declarations also support the relief sought by the Complaint and the Preliminary Injunction Motion, and I incorporate them by reference herein.  I now submit this declaration (this "<u>Declaration</u>") to provide additional facts in support of the Complaint and the Preliminary Injunction Motion.  Capitalized terms not defined herein have the meanings given to them in the Preliminary Injunction Motion or, if not defined therein, the Complaint or the Prior Declarations, as applicable.

4. The facts and statements set forth in this Declaration are based on:  (a) my personal knowledge; (b) information supplied to me by other members of management, professionals or employees; (c) my review of relevant documents; and/or (d) my opinion based upon my experience and knowledge of Old JJCI, J&J, the Debtor, the Talc Claims and the Securities Action.  If called upon to testify, I could and would testify to the facts and opinions set forth in this declaration.

### The Securities Claims

5. On February 8, 2018, the initial complaint in the Securities Action was filed, alleging two counts of securities law violations against J&J and two of its executives, Alex Gorsky, then Chairman and Chief Executive Officer of J&J; and Dominic J. Caruso, then Chief Financial Officer and Executive Vice President of J&J.  The first count alleged violations of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and the SEC's regulation implementing the provision, Rule 10b-5, 17 C.F.R. § 240.10b-5, against J&J, Gorsky, and Caruso.  The second count alleged violations of section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Gorsky and Caruso.  The Securities Claimants later amended their complaint, asserting both claims against five new defendants and including further allegations.  The five additional defendants

included the following individuals:  J&J officer Michael Sneed; former J&J officer Sandra Peterson; and former Old JJCI employees Carol Goodrich, Joan Casalvieri, Ph.D. and Tara Glasgow.

6. On December 27, 2019, the District Court dismissed the claims against Caruso, Peterson, and Sneed and limited the section 10(b) and Rule 10b 5 claims "to those stemming from . . . statements regarding the safety of its Talc Products, the 'asbestos-free' nature of its talc, and the Company's commitment to product safety, quality assurance, and research." The Securities Action has been in discovery since the District Court disposed of the motion to dismiss.  Fact discovery was scheduled to close on March 4, 2022, with the court permitting certain fact witness depositions to occur after that date.  On March 2, 2022, the Court suspended all deadlines until it rules on pending motions, including the Securities Claimant's motion for class certification and certain discovery disputes.

7. To date, the Securities Claimants have propounded 124 requests for production on the Third-Party Securities Defendants, including many that target information at the heart of the Talc Claims.  Examples of documents and materials produced include transcripts, exhibits, and videos from depositions that have occurred in the talc product-liability litigation.  In July 2021, the parties in the Securities Action stipulated that the Securities Claimants may take up to 30 depositions of current and/or former J&J employees and up to 70 hours of merits depositions of third parties and that the Third-Party Securities Defendants may take up to 15 merits depositions.  Expert discovery will extend well beyond fact discovery.

8. There is substantial overlap between the Securities Claims and the Talc Claims. The Third-Party Securities Defendants maintain (as does the Debtor) that the talc products were safe and free from asbestos (and that the statements at issue were true and made in

good faith). To establish that the statements at issue were false or misleading in violation of the securities laws, the Securities Claimants will need to prove that the talc products were harmful or contained asbestos. That issue will hinge on the same documents, testimony, and other discoverable information the talc claimants would use in any claims estimation in the Chapter 11 Case or to otherwise prove product liability against the Debtor.

9. Discovery in the Securities Action has substantially overlapped with discovery related to the Talc Claims. That overlap includes document requests and testimony concerning talc-related liability. The Securities Claimants' most recent requests for production took direct aim at the corporate restructuring that led to the Debtor's Chapter 11 Case. Even after fact discovery is completed in the Securities Action, expert discovery there will continue to highlight these concerns. Expert discovery in the Securities Action will directly overlap with issues at the heart of the Talc Claims, including alleged asbestos product contamination, testing, and safety issues (all relating to general causation) and regulatory interactions. As a result, the discovery-related issues that could harm the Debtor will continue well past the close of fact discovery.

10. The Debtor has requested that the Securities Claimants agree to a voluntary stay of the Securities Action during the pendency of this Chapter 11 Case, but the Securities Claimants—unlike other similarly situated parties, including the state attorneys general described below—have refused to agree to a voluntary stay.

**The Debtor's Need for the Requested Injunctive Relief**

11. As discussed in more detail in the Prior Declarations, the Debtor commenced this Chapter 11 Case to permanently, fully and equitably resolve all current and

future talc-related claims against it through the consummation of a plan of reorganization that includes the establishment of a trust. And the Debtor has ample funding to do so.

12. The Debtor faces tens of thousands of talc-related claims that are best resolved in this proceeding. But that can happen only if the Debtor succeeds in confirming a plan of reorganization. From the outset of the Chapter 11 Case, the Debtor has repeatedly expressed its desire to engage in mediation with the holders of Talc Claims to facilitate the establishment and funding of a trust to resolve the Chapter 11 Case and provide equitable recoveries to creditors. The Debtor is also preparing to engage in mediation with certain governmental authorities. In particular, offices of the attorney general of certain states are conducting investigations or have commenced lawsuits related to the talc products of Old JJCI and J&J. The Debtor has engaged with certain of these governmental parties and has commenced discussions regarding the formation of an ad hoc committee representing more than 40 state attorneys general to enter into mediation with the Debtor with a view to resolving their claims.

13. Permitting the Securities Action to continue against the Third-Party Securities Defendants against this backdrop would interfere with the Debtor's reorganization and undermine the public interest. Although the elements of the Securities Claims differ in part from those of the Talc Claims, the factual overlap between the two sets of claims is substantial, and the essence of both is the allegation that the talc used by Old JJCI is harmful. Simply put, the Securities Claimants cannot prove their claims without proving their disputed allegations that Old JJCI's and J&J's talc products were contaminated with asbestos or were otherwise harmful. Both sets of claims involve the same products, the same entities, the same witnesses, the same alleged conduct, and the same general time periods. The Securities Claims are thus, at their core,

factually derivative of the Talc Claims, and they have substantial potential to generate an evidentiary record that impacts the Talc Claims and disrupts the Debtor's reorganization.

14. Here, the disputed allegation that Old JJCI's or J&J's talc products are contaminated with asbestos or otherwise harmful is both at the heart of every Talc Claim and a critical element of the Securities Claims. The Securities Claimants assert that the Third-Party Securities Defendants made false or misleading statements with respect to the safety of such products. Absent a stay, therefore, that issue necessarily must be adjudicated in any litigation of the Securities Action.

### The Need for Limited Notice to the Defendants in Relation to the Issuance of a Temporary Restraining Order

15. Absent immediate injunctive relief through a temporary restraining order, the Debtor's reorganization efforts may be impeded from the outset. Litigation is active in the Securities Action as of the date of filing of this Motion. The last three fact-witness depositions of current or former J&J companies witnesses are currently scheduled for March 8, 9, and 18, 2022. Third party depositions are scheduled for the end of March, and more may be scheduled for April. Other outstanding discovery requests remain pending—some of which may lead to further motion practice before the district court. And certain critical motions remain pending before the district court, including a motion for class certification. To protect its interests, the Debtor must thus monitor this litigation, which will require the time and attention of key Debtor personnel, diverting estate resources away from reorganization efforts.

16. More significantly, the continued prosecution of the Securities Claims against the Third Party Securities Defendants risks significant, immediate, and irreversible harm to the Debtor and its estate. The Court's denial of the Motions to Dismiss the Chapter 11 Case and its granting of the Debtor's request for a preliminary injunction with respect to the Talc

Claims created a critical opportunity for the Debtor and its stakeholders to commence mediation with a view to achieving a consensual and equitable resolution of this case for the benefit of all. Allowing the Securities Claimants to march forward with their efforts to establish in another forum in the same jurisdiction the same disputed facts with respect to their Securities Claims that are at the heart of the Talc Claims would disturb the momentary environment for negotiation created by this Court's efforts and would jeopardize the Debtor's attempts to resolve this Chapter 11 Case. Thus, entry of a temporary restraining order is appropriate to bring a halt to all proceedings in the Securities Action to avoid immediate harm to this Chapter 11 Case and to allow the Debtor and its stakeholders to maximize the opportunity presented to them.

Dated: March 7, 2022                                            */s/ John K. Kim*
                                                                John K. Kim